IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:15-CV-00043-RLV

| | |
|---|---|
| RAYMOND KNOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| | ) |
| NATIONSTAR MORTGAGE, LLC, AND | ) |
| THE FEDERAL HOME LOAN | ) |
| MORTGAGE CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Motions to Dismiss by Defendants Nationstar Mortgage, LLC ("Nationstar") and The Federal Home Loan Mortgage Corporation ("FHLMC"). (Doc. 7; Doc. 21). Having been fully briefed and considered, the Defendants' motions are now ripe for disposition. For the reasons stated below, Nationstar's Motion to Dismiss (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART** and FHLMC's Motion to Dismiss (Doc. 21) is **GRANTED**.

I. **BACKGROUND**

This case concerns foreclosure proceedings regarding a residence at 125 Colville Road, Mooresville, North Carolina 28117 (the "Property"). In 2007, Plaintiff mortgaged the Property by signing a Note and a Deed of Trust that identified Countrywide KB Home Loans as the lender and Note holder. (Doc. 1 at 3; Doc. 1, Exs. A, B). On April 29, 2010, the Superior Court for Iredell County issued an order allowing foreclosure on the Property. (Doc. 1 at 4; Doc. 1, Ex. F). In his

1

complaint, Plaintiff alleges that Nationstar is threatening to enforce the state court order allowing foreclosure even though it does not own Plaintiff's mortgage or possess the Note. (Doc. 1 at 3).

Relevant to what entity currently owns Plaintiff's mortgage and possesses the Note, Countrywide KB Home Loans ceased operating and both the Note and the servicing of Plaintiff's mortgage were passed to other entities. (Doc. 1 at 4; Doc. 1, Exs. D, F). The record does not provide a complete picture of all the entities which have owned the mortgage, held the note, or provided mortgage servicing on the mortgage. What is apparent is that the state court order allowing foreclosure identified BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, L.P., as holding the Note. (Doc. 1 at 4; Doc. 1, Ex. F). At some point thereafter, Bank of America, N.A. assumed mortgage servicing duties. (*See* Doc. 1 at 4; Doc. 1, Ex. D). On October 16, 2013, Nationstar assumed mortgage servicing responsibilities from Bank of America, N.A., providing Plaintiff notice of this change on November 1, 2013. (Doc. 1 at 4; Doc. 1, Ex. D). Finally, in response to a Qualified Written Request ("QWR") by Plaintiff, Nationstar represented that FHLMC owned Plaintiff's mortgage. (Doc. 1 at 5; Doc. 1, Ex. H).

Plaintiff's complaint is less than a model of clarity with respect to the specific claims he seeks to raise. The gist of Plaintiff's complaint is an allegation of fraud against Nationstar based on its attempt to enforce the state court order allowing foreclosure. (Doc. 1). Plaintiff contends Nationstar lacks the authority to enforce the state court order because it neither owns his mortgage nor possesses the Note. *Id.* Plaintiff's complaint may also be liberally construed to include claims challenging the transferability of his mortgage and of the Note and asserting that Nationstar violated the Real Estate Settlement Procedures Act (RESPA) by failing to adequately respond to his QWR. *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (requiring liberal construction of pro se complaint). Plaintiff seeks litigation expenses, consequential and punitive damages stemming

from Nationstar's allegedly fraudulent threat to enforce the state court order allowing foreclosure, and a "permanent injunction" or a "temporary restraining order" preventing Nationstar and FHLMC from foreclosing on the Property. (Doc. 1 at 8-9).

Nationstar moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Nationstar asserts that (1) it has physical possession of the Note so as to defeat Plaintiff's fraud allegation; (2) it adequately responded to Plaintiff's QWR; (3) Plaintiff failed to state his allegation of fraud with particularity as required by Fed. R. Civ. P. 9(b); (4) Plaintiff fails to meet the standard for injunctive relief; and (5) review of Plaintiff's claims is barred by the *Rooker-Feldman* Doctrine.[1] (Doc. 8). FHLMC moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6). (Doc. 21) FHLMC adopts Nationstar's arguments for dismissal, as applicable to FHLMC, and additionally argues that the Note and Deed of Trust specifically permit the transferring of both documents and that Plaintiff generally fails to assert a plausible claim against FHLMC. *Id.*

## II. DISCUSSION

*1. Standard of Review*

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b), this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[1] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelty Trust Co.*, 263 U.S. 413 (1923).

3

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Moreover, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 827 (4th Cir. 2010); *see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

In applying this standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation and internal quotation marks omitted); *Dolgaleva*, 364 F. App'x at 827. However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions[.]" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008)

4

(internal quotation marks omitted) (applying *Twombly* standard in dismissing *pro se* complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679)); *accord Pickens v. JP Morgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 62911, at *7-10 (W.D.N.C. May 12, 2016) (Voorhees, J.); *Silvers v. Iredell Cty. Dep't of Soc. Servs.*, 2016 WL 427953, at *7 (W.D.N.C. Feb. 3, 2016) (Voorhees, J.). The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Ashby v. City of Charlotte*, 2015 U.S. Dist. LEXIS 103286, at *4 (W.D.N.C. 2015); *Godfrey v. Long*, 2012 U.S. Dist. LEXIS 2671, at *3-4 (E.D.N.C. 2012) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)); *see also Silvers*, 2016 WL 427953, at *7.

    2. *Subject Matter Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over Plaintiff's action. "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). The principles of federalism serve as a limitation on a federal court's jurisdiction over a case touching a matter previously adjudicated by a state court. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also New York v. United States*, 505 U.S. 144, 181 (1992) ("State sovereignty is not just an end in itself: Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." (internal quotation marks omitted)). The *Rooker-Feldman* Doctrine captures this limitation on the jurisdiction of federal

5

courts and prevents a federal district court from hearing "challenges to state court decisions in particular cases arising out of judicial proceedings," thus preventing a federal district court from essentially taking appellate jurisdiction over a state court decision. *Feldman*, 460 U.S. at 486; *see also Rooker*, 263 U.S. at 415-16. Included amongst the claims that a federal district court lacks jurisdiction over under the *Rooker-Feldman* Doctrine are claims that are "inextricably intertwined" with the claim decided in the state court proceeding—i.e., claims the adjudication of which requires the federal court to "determine that the state court judgment was erroneously entered" or to "take action that would render the judgment ineffectual." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (brackets omitted).

Contrary to Defendants' assertion, Plaintiff's complaint disavows any claims clearly barred by the *Rooker-Feldman* Doctrine—i.e., claims challenging the validity of the state court order allowing foreclosure.[2] (Doc. 1 at 4, ¶ 18). The claims actually raised in Plaintiff's complaint are not barred by the *Rooker-Feldman* Doctrine. First, Plaintiff's challenge to the legality of the sale or transfer of his mortgage after the issuance of the state court order allowing foreclosure could not have been presented to the state court and a favorable ruling would not impair the rights of the parties to the state court order or otherwise invalidate the order. Second, the *Rooker-Feldman* Doctrine does not bar consideration of Plaintiff's claim that Nationstar failed to comply with the RESPA because the alleged violation occurred subsequent to the state court order and a finding

---

[2] As elements of Plaintiff's responses to the motions to dismiss could be construed as trying to raise claims challenging the validity of the state court order allowing foreclosure, the Court, out of an abundance of caution, will discuss application of the *Rooker-Feldman* Doctrine to the claims identified by Defendants. Any claim challenging the validity of the state court order on the ground that Plaintiff did not receive notice of the state court proceeding would be barred because to grant relief this Court would need to invalidate the state court order. *See Dalenko v. Stephens*, 917 F. Supp.2d 535, 546-48 (E.D.N.C. 2013) (applying *Rooker-Feldman* Doctrine to complaint alleging that Plaintiff did not receive adequate notice of state court proceeding). Similarly, any claim challenging the validity of the state court order on the ground that the pre-order transfer of the mortgage and Note was illegal would be barred by the *Rooker-Feldman* Doctrine because any grant of relief on that claim would impair the rights conferred by the order to the parties to the proceeding.

that Nationstar failed to comply with the RESPA would not impair the validity of the state court order. Finally, the *Rooker-Feldman* Doctrine does not prevent this Court from taking jurisdiction over Plaintiff's claim that Nationstar is fraudulently trying to enforce the state court order. This is because Plaintiff challenges whether Nationstar *is* the successor in interest to the state court order allowing foreclosure, and not, as Defendants suggest, whether a successor in interest may enforce the state court order. Thus, if the evidence shows that Nationstar lacks the necessary interest and authority to enforce the order, this Court could grant Plaintiff relief without impairing the state court order.[3] Accordingly, this Court has jurisdiction over, and will consider, each of the claims actually raised in Plaintiff's complaint.

3. *Transferability of Lease*

Plaintiff contends that if Nationstar or FHLMC owns his mortgage or possesses the Note or Deed of Trust, ownership or possession was acquired via fraud because nothing permitted the transfer of the mortgage or the security instruments. "A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court." *Metcalf v. Black Dog Realty, LLC*, 684 S.E.2d 709, 719 (N.C. Ct. App. 2009) (internal quotation marks omitted). "Contracts are interpreted according to the intent of the parties [which] is determined by examining the plain language of the contract." *Id.* (internal quotation marks omitted).

The Note Plaintiff signed includes an acknowledgment by the borrower "that the Lender may transfer" the Note. (Doc. 1, Ex. A). The Note goes on to define the term "Note Holder" as "[t]he Lender *or anyone who takes this Note by transfer* and who is entitled to receive payments under this Note." *Id.* (emphasis added). Similarly, the Deed of Trust states that "[t]he Note, or a partial interest in the Note (together with this Security Instrument) can be sold one or more times

---

[3] In actuality, preventing an entity that lacks authority to enforce a state court order from enforcing that order upholds, rather than impairs, the order because it preserves the rights of the actual parties entitled to relief under the order.

7

without prior notice to the Borrower." (Doc. 1, Ex. B at 8). The Deed of Trust also advises that the "loan servicer" may change as a result of the sale of the Note or independent of a sale of the Note. (Doc. 1, Ex. B at 8). Based on this plain language in the Note and Deed of Trust, it is apparent that the mortgage, Note, and Deed of Trust were subject to sale and/or transfer. *Cf.* N.C. Gen. Stat. § 47-17.2 (permitting the transfer or assignment of a note or other instrument secured by a mortgage and indicating that the transfer of the note "shall be an effective assignment of the deed of trust, mortgage, or other security instrument"). Therefore, Plaintiff's contention that if Nationstar or FHLMC acquired the Note after issuance of the state court order allowing foreclosure then the acquisition was the product of fraud because the Note was non-transferable is untenable as a matter of law. Accordingly, Plaintiff's claim that his mortgage and that the Note were non-transferable is dismissed with prejudice.

4. *RESPA Claim*

The RESPA places a duty on a mortgage servicer to respond to a Qualified Written Request ("QWR") from a borrower. A QWR is written correspondence from a borrower that is not on a payment coupon or other payment medium and that:

> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2012). Pertinent here, where a mortgage servicer receives a QWR, the mortgage servicer "shall provide a written response acknowledging receipt of the correspondence within 5 days" of receipt of the QWR. 12 U.S.C. § 2605(e)(1)(A). Thereafter, the mortgage servicer shall, no later than thirty days after receipt of the QWR, conduct an investigation into the QWR, correct the borrower's account when appropriate, and "provide the borrower with a written

explanation or clarification" responding to the substance of the QWR.[4] 12 U.S.C. § 2605(e)(2). The written explanation or clarification must include (1) "to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer"; (2) "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower"; and (3) "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(B), (C).

On November 7, 2013, Plaintiff submitted his first letter to Nationstar, a letter labeled as a QWR. (Doc. 1 at 4; Doc. 1, Ex. G). Plaintiff's first letter sought the balance on his mortgage, the name of the entity that owned the mortgage, a copy of the Note, the fees and charges assessed on the mortgage, and the payment history on the mortgage. (Doc. 1 at 4; Doc. 1, Ex. G). On November 18, 2013, Nationstar mailed Plaintiff an initial response acknowledging receipt of Plaintiff's QWR, stating that FHMLC owned Plaintiff's loan, and indicating that it would provide Plaintiff an additional response within thirty days of receiving the QWR. (Doc. 1 at 5; Doc. 1, Ex. H). Plaintiff sent a second letter to Nationstar, which was not labeled as a QWR. (Doc. 1 at 5; Doc. 1, Ex. I). In his second letter, Plaintiff challenged whether FHLMC owned the mortgage and asserted that Nationstar lacked legal authority to enforce the state court order allowing foreclosure. (Doc. 1, ex. I). On January 10, 2014, Nationstar mailed Plaintiff a second response, in which it indicated that it planned to contact Bank of America, N.A. regarding documentation of the Note and would forward a copy of any documentation it received from Bank of America, N.A. to Plaintiff. (Doc. 1 at 5; Doc. 1, Ex. J). Nationstar's second response also provided the name and

---

[4] The thirty-day period for the loan servicer to respond may be extended by fifteen days "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." 12 U.S.C. § 2605(e)(4).

contact information of a Nationstar representative and informed Plaintiff that the Property was due for foreclosure and that Plaintiff was sixty payments behind. (Doc. 1, Ex. J). Plaintiff alleges that he received no further communications from Nationstar regarding his QWR after Nationstar's response dated January 10, 2014. (Doc. 1 at 5).

First, Nationstar contends that Plaintiff cannot prevail on his RESPA claim because it properly answered his first letter and that he has not alleged that his second letter was a QWR. In the alternative, Nationstar contends that its two responses provided Plaintiff with the requested information, as required by RESPA. Finding that, as a matter of law, Nationstar complied with the requirements set out in the RESPA, the Court will only evaluate Nationstar's alternative argument for dismissal of Plaintiff's RESPA claim.

Considering Nationstar's two responses in tandem, Plaintiff's RESPA claim amounts to a disagreement over the accuracy of Nationstar's answers to the QWR and not a disagreement over whether Nationstar responded to the QWR with the information required by § 2605(e)(2). Nationstar's responses provided Plaintiff with basic information regarding the status of his mortgage and of his payment history, told plaintiff who owned the mortgage, provided Plaintiff with the contact information of a Nationstar representative, and implicitly indicated that Nationstar was unable to produce documentation regarding the Note because Bank of America, N.A. possessed the requested documentation. (Doc. 1, Exs. H, J). Accordingly, Nationstar complied with the requirements of § 2605(e) and Plaintiff's RESPA claim is dismissed with prejudice.[5]

---

[5] Even if Nationstar failed to comply with the requirements set out in § 2605(e)(2)(B), (C), Plaintiff's RESPA claim would be subject to dismissal without prejudice because Plaintiff's complaint fails to allege what, if any, damage he suffered as a result of Nationstar's alleged failure to provide the information required by the RESPA. *See Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp.2d 561, 575 (E.D.N.C. 2012) (collecting cases concluding that plaintiff, to advance viable RESPA claim, must allege actual damage from mortgage servicer's failure to respond to QWR).

5. *Allegations of Fraud*

Plaintiff's complaint raises a claim of fraud against Nationstar and FHLMC. In this claim, Plaintiff asserts that both Defendants are attempting to enforce the state court order allowing foreclosure despite lacking the legal right to enforce the order because neither Nationstar nor FHLMC own Plaintiff's mortgage or possess the Note. Where a claim sounds in fraud, the claim is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to permit the identification and disposition of unfounded and unmeritorious fraud claims at any early stage of litigation. *Teacher's Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 171 (4th Cir. 2007) (citing 5A Charles A. Wright & Hunter M. Miller, Federal Practice and Procedure § 1296 (3d ed. 2004)).

To make out a claim of fraud under North Carolina law, a plaintiff must establish that the defendant "(1) made a false representation of material fact, (2) knew it was false (or made it with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) the plaintiff must be injured by reasonably relying on the false representation." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999) (identifying elements of fraud claim under North Carolina law); *see also State v. Seelig*, 738 S.E.2d 427, 431 (N.C. Ct. App. 2013) (identifying elements of offense of obtaining property by false pretenses as "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another" (internal quotation marks omitted)). As to Nationstar, Plaintiff has pled the essential elements of fraud with sufficient particularity. Plaintiff's complaint asserts that (1) Nationstar represented that FHLMC owned Plaintiff's mortgage and that it

11

possesses the Note where neither Nationstar nor FHLMC owns plaintiff's mortgage or possesses the Note; (2) Nationstar knows that neither it nor FHLMC owns Plaintiff's mortgage or possesses the Note; (3) Nationstar represented that it held the Note in an effort to deter Plaintiff from challenging Nationstar's attempt to enforce the state court order allowing foreclosure; and (4) Plaintiff has sustained damages from defending against Nationstar's threat of foreclosure and will sustain damages if Nationstar acts on its threat to enforce the state court order allowing foreclosure. Further, Plaintiff has alleged when, and in what context, Nationstar made the aforementioned representations, providing documents pertaining to some of the representations. Although Nationstar counters, in its memorandum in support of its motion to dismiss, that it is in "physical possession of the original Note" (Doc. 8 at 3), Nationstar has not presented any documentation substantiating this assertion. Thus, while Nationstar may, ultimately, be able to demonstrate, through production of the Note, that its representation was not fraudulent and that Plaintiff's complaint is without merit, Plaintiff's contention that Nationstar does not possess the Note and does not have a legal right to enforce the order allowing foreclosure is plausible at this stage of the litigation.[6] Accordingly, Nationstar's motion to dismiss is denied as to Plaintiff's claim that Nationstar is fraudulently and wrongfully trying to enforce the state court order allowing foreclosure.

---

[6] In so concluding, the Court acknowledges that Plaintiff does not dispute that Nationstar is the servicer of Plaintiff's mortgage. A mortgage servicer is an entity that oversees "[t]he administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes." Black's Law Dictionary, pg. 1169 (Deluxe 10th ed. 2014). A mortgage servicer is typically in privity with the lender and note holder such that it may rely on state court orders when managing a mortgage on behalf of the lender. *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st. Cir. 2006). However, it is not necessarily the case that a mortgage servicer will administer the foreclosure proceedings because once foreclosure is commenced there is no longer a mortgage to service. *Cf. Travelers Indem. Co. of Ill. v. Liberty Mut. Ins. Co.*, 70 F. App'x 673, 677 (4th Cir. 2003). Here, nothing in the complaint or record establishes the scope of Nationstar's role as mortgage servicer such that dismissing Plaintiff's complaint based on Nationstar role as mortgage servicer would require the Court to assume facts about Nationstar's authority and obligations as mortgage servicer.

As to FHLMC, Plaintiff's complaint fails to allege, with particularity, any of the elements of fraud. Although Plaintiff alleges, in passing, that FHLMC represented that it owned the mortgage (Doc. 1 at 2), the complaint contains no allegations regarding when or in what context FHLMC made this alleged representation. *Cf. Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 9 (N.C. Ct. App. 2012) (requiring claim sounding in fraud to allege "time, place and content of fraudulent representation [and] identity of the person making the representation" (internal quotation marks omitted)). Instead, reading Plaintiff's complaint and his responses to the motions to dismiss on the whole, it appears that Plaintiff's broad and unspecified allegation as to FHLMC stems primarily from his correspondence with Nationstar and his own research rather than from any representation by FHLMC. (*See* Doc. 22 at 1). Furthermore, unlike Nationstar, FHLMC has not contended in filings in this proceeding that it is the holder of the Note. Therefore, unlike with respect to Nationstar, Plaintiff's allegation of fraud against FHLMC is speculative and each element of the claim is not pled with the requisite particularity mandated by Fed. R. Civ. P. 9(b). Accordingly, the claim against FHLMC will be dismissed without prejudice.

6. *Preliminary Injunction*

Plaintiff's complaint seeks a preliminary injunction barring Nationstar from acting on the state court order allowing foreclosure. A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003). Such a remedy is not granted to a party as a matter of right. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary

remedy of injunction." *Winter*, 555 U.S. at 24 (internal quotation marks omitted). To obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.

Here, Plaintiff has not established the requisite likelihood of success necessary to obtain a preliminary injunction. First, although Plaintiff alleges that Nationstar does not possess or hold the Note, the record does not presently support the conclusion that Plaintiff can prove this allegation by a preponderance of the evidence. Second, and as noted *supra*, even if Nationstar does not possess the Note, Nationstar's role as mortgage servicer likely places Nationstar in privity with the owner of the mortgage and holder of the Note, if Nationstar is not that entity, and grants Nationstar the authority to enforce the state court order allowing foreclosure. Therefore, although it is plausible that Plaintiff may succeed on the merits of his claim, it is not sufficiently likely that he will. Therefore, the Court declines, at this juncture, to grant Plaintiff's requested injunctive relief.

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

    (1) Defendant Nationstar's Motion to Dismiss (Doc. 7) is **GRANTED IN PART** and **DENIED IN PART**; and

    (2) Defendant FHLMC's Motion to Dismiss (Doc. 21) is **GRANTED**.

**SO ORDERED.**

Signed: September 21, 2016

Richard L. Voorhees
United States District Judge